UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| THE INSTITUTE OF MEDICAL EDUCATION, INC., | ) ) | Case No.: 11-CV-05755-LHK |
| Plaintiff, | ) ) ) | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO CLAIM ONE OF THE |
| v. | ) ) | COMPLAINT AND DECLINING TO |
| WESTERN ASSOCIATION OF SCHOOLS AND COLLEGES, and DOES 1 THROUGH 10, INCLUSIVE | ) ) ) | EXERCISE SUPPLEMENTAL JURISDICTION |
| Defendants. | ) ) ) | |

The Institute of Medical Education ("IME") brought this action seeking recovery from the Western Association of Schools and Colleges ("WASC") for denial of common law due process, breach of contract, breach of the implied covenant of good faith and fair dealing, intentional interference with contract, negligent interference with prospective business advantage, and promissory estoppel related to WASC's failure to maintain Department of Education ("DOE") recognition for the WASC Accrediting Commission for Schools ("WASC-ACS"). WASC filed a Motion for Summary Judgment as to all claims, which IME opposed with a Cross-Motion for Summary Judgment. *See* WASC Mot. Summ. J. ("WASC MSJ"), ECF No. 101; IME Mot. Summ. J ("IME MSJ"), ECF No. 103. WASC filed an opposition and reply, and IME filed a reply. *See* ECF Nos. 105–07. The Court *sua sponte* noted a possible jurisdictional defect in IME's case and

1
Case No.: 11-CV-05755-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO CLAIM ONE OF THE
COMPLAINT AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION

ordered the parties to show cause as to why the case should not be dismissed for lack of federal subject matter jurisdiction. *See* ECF No. 113. The parties filed responses. *See* ECF Nos. 114–15. Having considered the parties' submissions and the relevant law, the Court hereby assumes jurisdiction over IME's claim for violation of its common law due process rights, GRANTS WASC's Motion for Summary Judgment as to that claim, and declines to exercise supplemental jurisdiction over the remaining state law claims.

I.   **BACKGROUND**

   **A. Factual Background**

Except as noted below, the facts in this case are largely undisputed. IME is a private postsecondary educational institution, established in 2003, and operating in California, providing "career-oriented education in the areas of Vocational Nursing, Phlebotomy, Medical Assisting, Certified Nurse Assisting, Dental Hygiene, Medical Laboratory Technician, Ultrasound Technology, and Magnetic Resonance Imaging Technology." Vethody Decl. ¶ 2, ECF No. 103-8. WASC is a regional accreditation organization, headquartered in California, comprised of three commissions: the Accrediting Commission for Schools (for accrediting schools below the college level); the Accrediting Commission for Community and Junior Colleges (for accrediting institutions that offer two-year programs and award associate degrees); and the Accrediting Commission for Senior Colleges and Universities (for accrediting senior colleges and universities). First Amended Complaint ("FAC") ¶ 3, ECF No. 59; WASC MSJ at 3. The United States Department of Education ("DOE") recognized WASC-ACS as an accrediting agency for the purposes of Title IV funding (*i.e.*, federal funding for student aid) beginning in 1974, and most recently renewed WASC-ACS's recognition in 2005. Zinovyev Decl., Ex. C, ECF No. 101-1 at 44. WASC-ACS accredits more than 4,000 schools, Zinovyev Decl., Ex. A, ECF No. 101-1 at 15, approximately 20–25 of which received Title IV funding as of October 2010, Wiener Decl., Ex. E, ECF No. 103-5 at 19.

IME is one of the accredited schools that received Title IV funding. IME initially applied for accreditation with WASC-ACS in January 2007, Vethody Decl. ¶ 3, and received a three-year

2

term of accreditation beginning in June 2007. FAC ¶ 11. On July 7, 2010, WASC-ACS sent IME a letter confirming that WASC-ACS would grant IME a further six-year term of accreditation, expiring on June 30, 2016, and WASC-ACS ultimately granted this renewal. Vethody Decl., Ex. F, ECF No. 103-8 at 29. IME students began receiving Title IV funding in October 2008. Vethody Decl. ¶ 5.

By August 2010, however, WASC-ACS was poised to lose its DOE recognition. On August 6, 2010, the National Advisory Committee on Institutional Quality and Integrity ("NACIQI"), the body responsible for advising the Secretary of Education with regard to the recognition of accrediting agencies, *see* 20 U.S.C. § 1011c, sent WASC-ACS a draft report identifying 51 deficiencies in the WASC-ACS accreditation process. Zinovyev Decl., Ex. C, ECF No. 101-1 at 44; *see also* Wiener Decl., Ex. C, ECF No. 103-5 at 2. The report recommended that the DOE deny recognition of WASC-ACS unless WASC addressed the deficiencies by September 6, 2010. Wiener Decl., Ex. C, ECF No. 103-5 at 2. WASC, noting that "[l]ess than 10% of the [WASC-ACS accredited] Post-Secondary Schools receive Title IV funding," decided to reconsider seeking renewal of its DOE recognition. *See* Wiener Decl., Ex. D, ECF No. 103-5 at 17.

Before it did so, however, WASC-ACS solicited feedback from the entities that would be most concretely affected by the change in DOE accreditation. On August 23, 2010, WASC-ACS sent its accredited institutions a letter disclosing that "WASC is strongly considering withdrawing from its relationship with the USDOE as it relates to accrediting postsecondary institutions for Title IV purposes." Zinovyev Decl., Ex. C, ECF No. 101-1 at 80. IME contends that it never received this letter. Vethody Decl. ¶ 11. On September 2, after reviewing the comments received in response to its notice, WASC withdrew its application for DOE recognition. Wiener Decl., Ex. E, ECF No. 103-5 at 19; Zinovyev Decl., Ex. A, ECF No. 101-1 ("Brown Depo."), at 176. On September 9, 2010, WASC sent a letter to its accredited institutions alerting them to WASC's final decision to withdrawal from federal recognition. Wiener Decl., Ex. E, ECF No. 103-5 at 19. The withdrawal became effective on October 26, 2010, when the DOE sent WASC a letter confirming the WASC-ACS withdrawal decision. Zinovyev Decl., Ex. C, ECF No. 101-1 at 82. The DOE letter provided a

3

Case No.: 11-CV-05755-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO CLAIM ONE OF THE COMPLAINT AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION

contact for institutions participating in federal student aid programs "for guidance regarding their continued eligibility and participation." *Id.* On November 3, 2010, WASC alerted affected institutions to the change in status, and flagged that the DOE would allow affected institutions 18 months to find a new accreditation agency so that these institutions would remain eligible for Title IV funding—a window that extended to April 26, 2012. *Id.* at 83; *see also* 20 U.S.C. § 1099c.

IME ultimately failed to secure accreditation through another agency. Vethody Decl. ¶ 14. All other WASC-ACS-accredited schools that received Title IV funding in contrast were able to secure alternate accreditation within this 18-month window. Brown Decl. ¶ 2, ECF No. 101-2; Zinovyev Decl., Ex. C, ECF No. 101-1 at 15.

IME continued to operate under WASC-ACS accreditation after WASC-ACS withdrew from DOE recognition. *See* Zinovyev Decl., Ex. C, ECF No. 101-1 at 40. This continued accreditation was notwithstanding WASC's discovery in August 2010 that IME operated on a "for-profit" basis in violation of WASC guidelines. *See* Zinovyev Decl., Ex. C, ECF No. 101-1 at 3. WASC continued to accredit IME despite this violation because IME was seeking accreditation from other agencies. *Id.* As part of WASC's continued accreditation of IME, WASC provided a letter in support of IME's bid to seek certification from a different agency to maintain its Title IV funding. *See* Zinovyev Decl., Ex. C, ECF No. 101-1 at 23. WASC's Associate Executive Director asked IME's founder to "please let [him] know whenever you need more letters of recommendation and we will be ready to prepare them" *See* Zinovyev Decl., Ex. C, ECF No. 101-1 at 22. In response, IME's founder stated, "Thank you very much and looking forward to healthy relationship with WASC (even if you are not our Title IV/primary accreditation agency)." *Id.*

On February 14, 2012, the California Bureau for Private Postsecondary Education ("BPPE") issued IME an "Amended Notice of Emergency Decision" requiring that IME cease enrollment, instruction, and the collection of tuition by February 16, 2012. Wiener Decl., Ex. J, ECF No. 103-7 at 9. The BPPE based its decision in part on the fact that IME was misrepresenting its accreditation status under California law by labeling itself "accredited" in its advertising and

promotional materials and that IME was "no longer financially viable" because IME "relie[d] on student federal financial aid in order to operate." *Id.* at 11.

### B. Procedural Background

IME filed this action on November 11, 2011, seeking redress from WASC for denial of common law due process, breach of contract, breach of the implied covenant of good faith and fair dealing, intentional interference with contract, negligent interference with prospective business advantage, and promissory estoppel. Compl., ECF No. 1. IME filed an amended complaint on October 24, 2012 (hereinafter, "the complaint"). *See* FAC. On July 26, 2013, WASC filed a Motion for Summary Judgment as to all of IME's claims. *See* WASC MSJ. IME filed an opposition and Cross-Motion for Summary Judgment on August 8, 2013. *See* IME MSJ. WASC filed a reply and opposition, *see* ECF Nos. 105–06, and IME filed a reply, *see* ECF No. 107.

After reviewing the briefing, the Court noted a possible jurisdictional defect, and ordered the parties to show cause as to why the case should not be dismissed for lack of subject matter jurisdiction. ECF No. 113. Specifically the Court asked the parties to brief whether either the Higher Education Act ("HEA"), 20 U.S.C. § 1099b(f), or the federal common law conferred federal subject matter jurisdiction under 28 U.S.C. § 1331. *See id.* WASC filed a response arguing that the case should be dismissed for lack of jurisdiction, ECF No. 114, and IME argued that jurisdiction is in fact proper, ECF No. 115. Arthur Chen, Minh Duc Do, Cynthia Donovan, Eduardo Espinoza, Alejandro Loquillano, Jr., Lynnett Reyes, and Lisa Saminathen, each a judgment creditor of IME (collectively "amici"), moved for leave to file an amicus curiae brief in response to the Court's order. ECF No. 116.[1]

## II. LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine disputed issues

---

[1] The Court has "broad discretion to appoint amici curiae." *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982). Amici here contend that this Court should use California law to interpret a critical term, "accreditation" in 20 U.S.C. § 1099b(f). Because amici's brief addresses a key argument in detail that goes beyond the analysis offered by the parties, *see* ECF No. 116-1 at 4–5, the Court will consider the amici's submission. Accordingly, the Court GRANTS amici's motion for leave to file an amicus brief.

5

Case No.: 11-CV-05755-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO CLAIM ONE OF THE COMPLAINT AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION

of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Celotex,* 477 U.S. at 323. To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted). Once the moving party has satisfied its initial burden of production, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. *Id.* at 1103.

### III.  JURISDICTION

IME claims subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1099b(f). While WASC had not objected to the jurisdiction of the federal courts in this case, "[w]hen a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented." *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012). Here, IME claimed subject matter jurisdiction under a seldom-used provision of HEA, 20 U.S.C. § 1099b(f), as well as federal question jurisdiction under 28 U.S.C. § 1331 with regard to its common law due process claim. Because IME's claims appeared on their face to fall outside the jurisdictional grant of section 1099b(f), and because the common law due process claim appeared to be inextricably interwoven with section 1099b(f), this Court ordered the parties to show cause as to why the case should not be dismissed for lack of subject matter jurisdiction. ECF No. 113. Having considered the parties' submissions, for the reasons stated below, the Court finds that while section 1099b(f) does not provide federal jurisdiction for IME's case, the Court may nevertheless assume jurisdiction over IME's cause of action for common law due process pursuant to section 1331.

6

Case No.: 11-CV-05755-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO CLAIM ONE OF THE
COMPLAINT AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION

**A. Jurisdiction under 20 U.S.C. § 1099b(f)**

IME first argues that jurisdiction is proper because of the jurisdictional grant found in the HEA. *See* 20 U.S.C. § 1099b(f). Because a federally recognized accrediting agency is in many ways "a proxy for [the Department of Education ("DOE")]" in deciding which institutions will be eligible for Title IV funding, section 1099b(f) grants exclusive jurisdiction to the federal courts for lawsuits brought against such accrediting agencies involving the "denial, withdrawal, or termination of accreditation." *Chicago Sch., Inc. v. Accreditation Alliance of Career Sch. & Colleges*, 44 F.3d 447, 449 (7th Cir. 1994). Under the heading "Jurisdiction," that statute provides:

> Notwithstanding any other provision of law, any civil action brought by an institution of higher education seeking accreditation from, or accredited by, an accrediting agency or association recognized by the Secretary for the purpose of this subchapter and part C of subchapter I of chapter 34 of Title 42 and involving the denial, withdrawal, or termination of accreditation of the institution of higher education, shall be brought in the appropriate United States district court.

20 U.S.C. § 1099b(f). Accordingly, section 1099b(f) confers federal jurisdiction where (1) an institution of higher education (2) accredited by or seeking accreditation from a federally recognized accrediting agency (3) brings a civil action involving the denial, withdrawal, or termination of accreditation.

IME does not satisfy the jurisdictional requirements of section 1099b(f) because it fails to meet the statute's third prong because the wrongdoing it alleges in this case does not involve the "denial, withdrawal, or termination of accreditation." IME alleges that WASC-ACS "voluntarily withdrew from the USDOE's Title IV compliance process." FAC ¶ 20. IME contends that this withdrawal meant that "IME was no longer accredited by a USDOE-approved accrediting commission." *Id.* ¶ 22. But IME does not allege, and the facts do not show, that WASC-ACS *ceased* accrediting IME. Indeed, more than six months after WASC's withdrawal from DOE recognition, WASC offered to honor the full term of IME's accreditation despite IME's breach of a WASC rule against operating as a for-profit institution. Zinovyev Decl., Ex. C, ECF No. 101-1 at 40–41. IME used its continuing accreditation from WASC as a credential in its search for a new accrediting agency. *Id.* IME's complaint is thus not centered on any cessation of accreditation because there was none. Instead, IME's complaint focuses on the fact that WASC-ACS's

7
Case No.: 11-CV-05755-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO CLAIM ONE OF THE COMPLAINT AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION

1    withdrawal from federal recognition "rendered the accreditation that WASC-ACS provided to IME

2    meaningless." FAC ¶ 36.

3          The jurisdictional question turns on whether "accreditation" under 1099b(f) contemplates

4    mere accreditation, as WASC contends and which was indisputably maintained, or whether the

5    statute contemplates the accreditation by a DOE-approved accrediting agency, as IME contends

6    and which indisputably was not maintained. Agreeing with WASC, the Court finds that the HEA

7    does not provide jurisdiction to a claim brought on the facts of the instant case because

8    "accreditation" refers to the status granted by an accrediting agency and not to the benefits

9    accorded to such status by the federal or state governments. The plain meaning of the statute is

10   clear that where such status has not been denied, withdrawn, or terminated, section 1099b provides

11   no jurisdiction. Where statutory language has a plain and unambiguous meaning consonant with

12   the relevant statutory scheme, such plain meaning will control. *Robinson v. Shell Oil Co.*, 519 U.S.

13   337, 340 (1997). In the education context, to "accredit" is to "recognize (a school) as having

14   sufficient academic standards to qualify graduates for higher education or professional practice."

15   *Black's Law Dictionary* 23 (9th ed. 2009). An accrediting agency may therefore "accredit" an

16   institution of higher education regardless of whether the agency is recognized by the DOE. *See*

17   *Keams v. Tempe Technical Inst., Inc.*, 39 F.3d 222, 227 (9th Cir. 1994) ("[An accrediting] agency

18   can go on accrediting schools" regardless of whether it has DOE recognition). Accordingly, a

19   change in an accrediting agency's status vis-à-vis the DOE is not equivalent to or tantamount to the

20   denial, withdrawal, or termination of accreditation and is therefore not a fact that would give rise to

21   federal jurisdiction under section 1099b(f).

22         This reading is consistent with the Ninth Circuit's decision in *Keams,* 39 F.3d at 222. The

23   question before the Ninth Circuit in that case was whether the HEA preempted a claim under state

24   tort law brought by students who claimed that an accrediting agency had negligently accredited a

25   school. *Id.* at 224. The Ninth Circuit held that it did not. *Id.* The Ninth Circuit held that while the

26   Secretary of Education had promulgated regulations for determining whether an accrediting agency

27   would be recognized by the DOE, these regulations did not displace state law challenges to

28

accreditation. *Id.* at 226. The Ninth Circuit stated that the students' brief "argues that these regulations 'are not standards as to how the agency should accredit a school, but criteria as to whether an accrediting agency should be recognized by the agency.' That is correct. If an accrediting agency does not meet the criteria, the Secretary can refuse to list it, but the agency can go on accrediting schools." *Id.* at 226–27. In so concluding, the Ninth Circuit recognized that accreditation was not confined to accreditation by a DOE-recognized agency, but rather that accreditation was a more general concept that embodied the relationship between an accrediting agency and a higher education institution.

Confining "accreditation" to the plain language of the statute is also consistent with the legislative scheme envisioned by Congress and the regulations promulgated pursuant to the statute. Specifically, the statutory and regulatory schemes contemplate that before an accrediting agency can be DOE-recognized, that such an agency have "experience" accrediting schools. *See* 20 U.S.C. § 1099b (in order to be recognized, an accrediting agency "shall demonstrate . . . experience"); 34 C.F.R. § 602.12 (recognition requires that an agency has "granted accreditation or preaccreditation . . . [t]o one or more institutions" and "[c]onducted accrediting activities"). Because DOE recognition requires experience granting accreditations, reading "accreditation" to mean "accreditation by a DOE-recognized agency," as IME suggests, would lead to a circular and paradoxical result.

Furthermore, accepting IME's definition would interfere with the statutory scheme envisioned by Congress. Specifically, Congress has created a remedy for educational institutions whose accrediting agencies have withdrawn from DOE recognition. This solution lies outside the section 1099b context. The HEA expressly provides for securing accreditation through an alternative channel by providing educational institutions a grace period of up to 18 months for securing alternative accreditation in the event that the accrediting institution withdraws from recognition. *See* 20 U.S.C. § 1099c(h)(2).

IME attempts to alter the definition of "accreditation" as used by section 1099b(f) in an attempt to cure this apparent jurisdictional defect. To this end, IME relies on the definitions of

9

Case No.: 11-CV-05755-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO CLAIM ONE OF THE COMPLAINT AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION

"accredited" provided by the California Education Code and in an unrelated provision of the Code of Federal Regulations. *See* ECF No. 115 at 4 (citing Cal. Educ. Code § 94813; 34 C.F.R. § 600.2). However, neither definition is controlling, and neither provides a coherent interpretation of section 1099b(f). Accordingly, for the reasons stated below, the Court does not find IME's contentions persuasive.

The California statute is inapposite. The California statute provides that "'[a]ccredited' means an institution is recognized or approved by an accrediting agency recognized by the United States Department of Education." Cal. Educ. Code § 94813. IME and amici argue that the legal effect of the California law is to condition state law accreditation on the federal recognition of the accrediting agency, making withdrawal of such recognition equivalent in fact and in law to a withdrawal of accreditation. *Id.* at 5; ECF No. 116, ex. 1 at 6. "The words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989). Here, the HEA and the California Education Code are separate and independent statutory schemes, with separate purposes. The California definition of "accredited" is only controlling in title 3, part 59, chapter 8 of the California Education Code, entitled "Private Postsecondary Institutions." *See* Cal. Educ. Code § 94810. There, the state Education Code uses the cited California definition of "accredited" to allow certain institutions to bypass procedures generally required of private postsecondary institutions. Cal. Educ. Code § 94890. The statute also prohibits these private postsecondary schools from advertising or promoting themselves as accredited unless they are accredited as defined in the code. Cal. Educ. Code § 94897(e). The fact that California law provides advantages to schools accredited by a DOE-recognized agency and regulates advertising regarding accreditation, however, does not alter the fact that unrecognized agencies can "accredit" schools for the purposes of federal law, specifically, section 1099b(f). Moreover, IME has no support for its contention that this state law interpretation should be used to modify the federal statutory scheme, which would result in differing

10
Case No.: 11-CV-05755-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO CLAIM ONE OF THE COMPLAINT AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION

interpretations of federal law based on each state's law. Accordingly, the Court finds that California law does not alter the plain meaning of the HEA or the Congressional intent behind it.[2]

IME's reliance on the federal regulatory definition in 34 C.F.R. § 600.2 is also misplaced. First, IME has not argued that the statute is ambiguous, and thus provides no reason for the Court to look to administrative interpretations. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984). Second, even if the Court had found the statute ambiguous, the regulations do not cut in IME's favor. IME relies on the definition provided in 34 C.F.R. § 600.2, in which "accredited" is defined as "the status of public recognition that a *nationally recognized* accrediting agency grants to an institution or educational program that meets the agency's established requirements." 34 C.F.R. § 600.2 (emphasis added). While the Court accords "considerable weight . . . to an executive department's construction of a statutory scheme it is entrusted to administer," *Chevron*, 467 U.S. at 844, the regulation IME cites does not interpret "accreditation" as used in section 1099b(f) of the statute. Rather, the definitions provided in 34 C.F.R. § 600.2 are expressly limited in their scope to Part 600 of the regulations. Part 600 "establishes the rules and procedures that the Secretary uses to determine whether an educational institution qualifies in whole or in part as an eligible institution of higher education under the Higher Education Act." 34 C.F.R. § 600.1.

The Court finds more persuasive the DOE's definition of "accreditation" in 34 C.F.R. § 602.3. Omitting any mention of national recognition, this regulation defines "accreditation" as "the status of public recognition that an accrediting agency grants to an educational institution or program that meets the agency's standards and requirements." 34 C.F.R. § 602.3. This definition is also cabined to a discrete portion of the regulations, here Part 602, which governs "[t]he Secretary's Recognition of Accrediting Agencies." *Id.* Part 602 is enacted pursuant to, and corresponds directly to section 1099b, which is similarly entitled "Recognition of accrediting

---

[2] Further, the nexus that IME and amici argue exists between federal recognition and the ability to operate under California law is attenuated at best. Unaccredited institutions, as defined by California law, may still operate with BPPE approval. *See* Cal. Educ. Code § 94817. IME's accreditation status was relevant to its shutdown only insofar as IME *misrepresented* its accreditation status on advertising or promotional materials and insofar as the institution was insolvent without Title IV funding. *See* Wiener Decl., Ex. J, ECF No. 103-7 at 9.

11
Case No.: 11-CV-05755-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO CLAIM ONE OF THE COMPLAINT AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION

agency or association." The Secretary's interpretation of accreditation found in 34 C.F.R. § 602.3 comports with the Court's plain reading of the statute and can reasonably be read as actually interpreting the statute in question. In contrast, aside from the bare assertion that "§ 1099b(f) incorporates the definition of 'accreditation' contained in 34 C.F.R. § 600.2," ECF No. 115 at 4 n.5, IME provides no reason why its chosen definition is either convincing or applicable.[3] Accordingly, to the extent that considering the DOE's regulations is proper, those regulations undermine IME's proposed interpretation and a finding that section 1099b(f) provides jurisdiction for this action.

IME contends that the Court should nevertheless assume jurisdiction over its claim because section 1099b(f) "provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." ECF No. 115 at 3 (quoting *Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc.*, 711 F.2d 138, 139 (9th Cir. 1983)). IME's contention is that the Supreme Court's decision in *Bell v. Hood*, 327 U.S. 678 (1946), requires courts to assume jurisdiction over a cause of action where the question of federal jurisdiction is wrapped up in the question of whether the plaintiff has stated a cause of action under the federal statute. *See Sun Valley Gasoline*, 711 F.2d at 140 ("Under *Bell v. Hood* and its progeny, the failure of a plaintiff to establish a federal cause of action upon which relief may be granted is a question going to the merits of an action.").

The line of cases requiring courts to assume jurisdiction when a statute both confers jurisdiction and creates a substantive cause of action is inapplicable because section 1099b(f) is exclusively jurisdictional and separate from the merits of IME's claims. As the Sixth Circuit has held, section 1099b(f) confers jurisdiction, but does not create a cause of action. *See Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 711 (6th Cir. 2006). "[Section] 1099b(f) is labeled 'Jurisdiction.' Its purpose is to give federal courts exclusive jurisdiction over disputes involving accreditation . . . . Such disputes can be resolved, not through the HEA, but through a common law claim for due process and adequate judicial review." *Id.* Moreover, the complaint does not, as IME claims in its response to this Court's order to show cause, bring a claim "that

---

[3] Generally regulations interpret and incorporate the language of statutes, not vice versa.

12
Case No.: 11-CV-05755-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO CLAIM ONE OF THE COMPLAINT AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION

1  [IME's] accreditation was wrongfully denied, withdrawn, and/or terminated." ECF No. 115 at 3.

2  Rather, in accordance with the Sixth Circuit's reading of the statute in *Cooley Law School*, IME's

3  complaint attempts to bring a claim for "denial of common law due process" and assorted state law

4  causes of action.[4] FAC ¶¶ 31–66. Accordingly, section 1099b(f) and its requirements do not

5  provide the substance of any of IME's claims and therefore do not require this Court to assume

6  jurisdiction over IME's claims.[5]

7  Section 1099b(f) requires the exclusive jurisdiction of the federal courts for actions that

8  meet certain requirements. For the reasons stated above, the facts show that IME's claims do not

9  fall within the section's ambit. The Court therefore finds that section 1099b(f) does not provide

10  federal jurisdiction in this case.

### B. Jurisdiction under the Federal Common Law

Having found that the Court lacks jurisdiction by virtue of section 1099b(f), the Court now turns to whether it has jurisdiction under 28 U.S.C. § 1331. Specifically, the Court analyzes whether there is federal question jurisdiction by virtue of the fact that this case raises questions under the federal common law. "[Section] 1331 jurisdiction will support claims founded upon federal common law as well as those of a statutory origin." *Illinois v. City of Milwaukee, Wis.*, 406 U.S. 91, 100 (1972). IME contends that federal courts have consistently exercised federal jurisdiction over common law due process claims in the accreditation context. ECF No. 115 at 8-9.

Here, whether the Court has federal question jurisdiction over IME's common law due process claim is dependent upon whether IME can state a common law due process claim. Specifically, if there is no basis for IME to raise a common law due process claim, then this Court necessarily lacks jurisdiction. As discussed above, under *Bell v. Hood*, federal courts must assume

---

[4] Notably, IME does not cite section 1099b(f) in reciting its six causes of action except in reference to its jurisdictional grant. *See* FAC ¶ 33.

[5] IME's *Bell v. Hood* argument is further weakened by the fact that *Bell* explicitly states that it does not prescribe assumption of jurisdiction where the federal claim is "wholly insubstantial and frivolous." 327 U.S. 678. Any HEA claim here is wholly insubstantial and frivolous, and accordingly would not require this Court to assume jurisdiction. *Cooley Law Sch.*, 459 F.3d at 710 ("[N]early every court to consider the issue [of whether the HEA creates a private right of action] in the last twenty-five years has determined that there is no express or implied private right of action to enforce any of the HEA's provisions." (internal quotation marks omitted)).

1   jurisdiction over matters when testing for subject matter jurisdiction is intertwined with testing the

2   merits of the claim. *Bell*, 327 U.S. at 682. *Bell* is necessarily implicated where a plaintiff asks a

3   court to imply a common law cause of action from a federal statutory scheme. *See Enders v. Am.*

4   *Patent Search Co.*, 535 F.2d 1085, 1089 (9th Cir. 1976) ("[A]n implied cause of action created by

5   federal law . . . 'arises under' federal law."). If a cause of action can be implied, then there is

6   federal jurisdiction. On the other hand, if no cause of action can be implied, "then dismissal of the

7   case would be on the merits, not for want of jurisdiction." *Bell*, 327 U.S. at 683.

8         Such is the case here. IME asks this Court to find that the HEA implies a common law due

9   process cause of action. *See* ECF No. 115 at 8. If IME is correct, and the HEA does imply a

10  common law due process cause of action, then this Court would have jurisdiction over that cause of

11  action. If IME is incorrect, and the HEA does not imply such a cause of action, then this Court

12  would lack jurisdiction over that cause of action and consequently the whole case. Because *Bell v.*

13  *Hood* requires that courts assume jurisdiction when the question of whether of a cause of action

14  exists is intertwined with the question of whether subject matter jurisdiction exists, this Court must

15  assume jurisdiction over IME's first cause of action, as the merits of that cause of action (*i.e.*,

16  whether the HEA implies a common law due process cause of action under the circumstances of

17  this case) and jurisdictional inquiry are so intertwined.[6]

18  **IV.   WASC'S MOTION FOR SUMMARY JUDGMENT**

19      **A.  Denial of Common Law Due Process**

20  Having found that the jurisdictional question is intertwined with the merits, the Court now

21  turns to the merits of IME's common law due process claim. IME contends that it is entitled to

22  summary judgment on its common law due process claim arising under the HEA. IME MSJ at 11;

---

[6] There are two exceptions to assuming jurisdiction under *Bell v. Hood*, neither of which applies here. The first exception to assuming jurisdiction is when the "the alleged claim . . . clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction," and the second exception applies where the claim is "wholly insubstantial and frivolous." *Bell*, 327 U.S. at 682–83. As discussed in more detail in the next section, courts have routinely exercised jurisdiction over common law due process claims arising under the HEA, and there is scant authority on when, in the accreditation context, educational institutions have common law due process rights. Accordingly, the Court finds that IME's claims are asserted in good faith and are not immaterial, insubstantial, or frivolous.

14
Case No.: 11-CV-05755-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO CLAIM ONE OF THE COMPLAINT AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION

*see also* FAC ¶¶ 31–36. WASC, on the other hand, contends that there exists no such right of action as a matter of law, ECF No. 106 at 10. WASC MSJ at 15. Both parties have moved for summary judgment as to the common law due process claim. ECF Nos. 101, 103. For the reasons stated below, the Court finds as a matter of law that the HEA creates no cause of action for the common law due process review of a DOE-recognized accrediting agency's decision to withdraw from DOE recognition and therefore GRANTS WASC's Motion for Summary Judgment as to IME's first cause of action.

The critical question before the Court is whether there exists a cause of action for common law due process under the circumstances of the instant case. IME contends that federal courts routinely inquire into whether accrediting agencies have complied with the contours of common law due process. ECF No. 115 at 8-9.

The majority of cases IME cites, however, consider federal common law due process questions arising from a denial or termination of accreditation, as discussed above, under the HEA. Accordingly, these cases are examples of the pursuit of common law due process claims rooted in the HEA's grant of jurisdiction where there is a denial or withdrawal of accreditation, not as here, a freestanding common law due process claim. For example, the claims in *Fine Mortuary College, LLC v. American Board of Funeral Service Education, Inc.*, 473 F. Supp. 2d 153, 157 (D. Mass. 2006), plainly concerned the denial of accreditation in that plaintiff institution contested the accrediting agency's refusal to reaccredit. Accordingly, the court explicitly considered the cause of action at issue in that case because of the jurisdictional grant of section 1099b(f). Similarly, in *Career Care Institute., Inc. v. Accrediting Bureau of Health Education Schools., Inc.*, No. 08-1186, 2009 U.S. Dist. LEXIS 45784 (E.D. Va. Mar. 24, 2009), the plaintiff brought a "claim of common law due process" after the defendant accrediting institution "issued a final decision to withdraw [its] grant of accreditation." *Id.* at *2. This case also fits squarely and explicitly within section 1099b(f)'s jurisdictional grant and is therefore inapposite. *Id.* at *6.  Unlike those cases, here, there has been no termination of accreditation for the purposes of the HEA's grant of jursidiction for the reasons discussed above, and therefore, there can be no claim for common law due process. The

15
Case No.: 11-CV-05755-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO CLAIM ONE OF THE COMPLAINT AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION

1    remaining cases that IME cites do not apply the federal common law and are thus inapposite to

2    IME's contentions here. For example, *Parsons College v. North Central Ass'n of Colleges and*

3    *Secondary Schools*, 271 F. Supp. 65, 70 (N.D. Ill. 1967), applies Illinois law, not the federal

4    common law. Further, *Parsons College* also involves a withdrawal of accreditation. *See id.* at 66.[7]

5          This Court could find no federal decision in which a court applied federal common law in

6    the accreditation context disconnected from the jurisdictional grant of section 1099b(f). This makes

7    sense. The federal common law in the accreditation context was created and applied because the

8    HEA grants exclusive federal jurisdiction but does not provide applicable law. *Chicago Sch.*, 44

9    F.3d at 449 ("If a grant of federal jurisdiction sometimes justifies creation of federal common law,

10   a grant of exclusive federal jurisdiction necessarily implies the application of federal law." (internal

11   citations omitted)); *Cooley Law Sch.*, 459 F.3d at 712 ("[Section 1099b(f)'s grant of exclusive

12   federal jurisdiction necessarily implies that federal law should govern disputes relating to decisions

13   made by those bodies. It would make little sense for state law to govern claims that could not be

14   heard in any state court."). In contrast, here, as discussed above there is no grant of exclusive

15   federal jurisdiction under section 1099b(f). Therefore, unlike the cases in which courts implied

16   common law due process causes of action to effectuate Congress' grant of exclusive federal

17   jurisdiction, here there is no basis or necessity to imply a cause of action. *Erie R. Co. v. Tompkins*,

18   304 U.S. 64, 78 (1938) (noting the general rule that "[t]here is no federal general common law").

19   Because the HEA does not, in the absence of a grant of exclusive jurisdiction, imply a common law

20   due process cause of action, the Court GRANTS WASC's Motion for Summary Judgment.

21       **B.  IME's Remaining Claims**

22         IME's common law due process claim, grounded in the HEA, is IME's only claim that even

23   possibly presents a federal question. Having granted summary judgment on that claim and having

---

[7] The two other cases IME cites are similarly inapposite. In *Florida College of Business v. Assoc. of Indep. Colleges & Schools*, 954 F. Supp. 256 (S.D. Fla. 1996), it is not clear that the court applied federal law. Further, the case concerned termination of accreditation, and therefore, the federal common law, if it were the source of law, would have been applicable under section 1099b(f). *Id.* at 258. *Rockland Inst. v. Assoc. of Indep. Colleges & Schools*, 412 F. Supp. 1015 (C.D. Cal. 1976), similarly does not clearly apply federal common law. Furthermore, as in *Florida College*, the federal case concerned an express withdrawal of accreditation.

16
Case No.: 11-CV-05755-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO CLAIM ONE OF THE COMPLAINT AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION

found that 20 U.S.C. § 1099b(f) does not provide IME with other grounds for jurisdiction, the Court is presented with the question of whether to exercise supplemental jurisdiction over IME's remaining state law claims under 28 U.S.C. 1367(c)(3). Where "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988)). Because that is the case here, the balance of factors points toward declining to exercise jurisdiction over IME's remaining claims, which are all based on state law, and the Court DISMISSES IME's remaining claims without prejudice.

V.    **CONCLUSION**

For the foregoing reasons, the Court GRANTS WASC's Motion for Summary Judgment as to IME's common law due process claim. The Court declines to exercise supplemental jurisdiction over IME's remaining claims, which are all based on state law, pursuant to 28 U.S.C. § 1367(c)(3) and therefore DISMISSES these claims without prejudice. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: December 18, 2013

_____
LUCY H. KOH
United States District Judge